# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-293-FDW

| | |
|---|---|
| **TERRELL BATTLE,** )  )  **Plaintiff,** )  )  vs. )  ) )  **FRANK PERRY, et al.,** )  )  **Defendants.** )  ) | **ORDER** |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1). See 28 U.S.C. §§ 1915(e); 1915A. On June 27, 2016, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 7). Thus, Plaintiff is proceeding in forma pauperis.

## I. BACKGROUND

Pro se Plaintiff Terrell Battle is a prisoner of the State of North Carolina, currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. Plaintiff filed this action on June 3, 2016, pursuant to 42 U.S.C. § 1983, naming the following as Defendants: (1) Frank L. Perry, identified as the Secretary of the North Carolina Department of Public Safety ("NCDPS"); (2) FNU Jonker, identified as the "Director/Administrator of Mental Health of NCDPS"; (3) FNU Smith, identified as the "Administrator of Health Care Services of NCDPS"; (4) FNU Sims, identified as an employee at Alexander; (5) "John Doe," who is not identified; and (6) "Jane Doe," who is not identified.

1

Plaintiff Battle, who was born male but identifies as female, alleges that she was diagnosed with Gender Identity Disorder ("GID") and Gender Dysphoria ("GD") in 2014. (Doc. No. 1 at 7). Plaintiff alleges that since 2014, she has "engaged in counseling and has successfully consolidated her female identity as her expressed gender." (Id.). She further alleges that she has "expressed her gender identity crisis and based upon the historical and clinical findings plaintiff has indicated and or indicates the [diagnostic] dangers of GD," including depression, PTSD, self-castration, and suicidal ideation. (Id.).

Plaintiff alleges that on April 8, 2016, Defendants Jonker and Smith evaluated assessment reports, which approved Plaintiff as a transgender inmate at Alexander. (Id.). Plaintiff alleges that Defendants Sims was assigned the duty to follow up on the treatment assessments to provide Plaintiff with the appropriate transgender treatment, but that she failed to do so. (Id.). Plaintiff alleges that she requested to receive hormone therapy as part of her gender reassignment, but Defendants have refused to allow Plaintiff to undergo hormonal therapy and they have refused to provide Plaintiff with a transgender dysphoria specialist while at the prison. (Id. at 8). Plaintiff alleges that Defendants are denying her hormone therapy based on the NCDPS' policy of denying hormone therapy if it was not applied before incarceration.[1] (Id. at 9). Based on Defendants'

---

[1] The NCDPS policy, as stated in the Step One response to Plaintiff's grievance dated November 17, 2015, provides: "If, immediately prior to incarceration, hormone therapy was prescribed in the community by a licensed provider as part of a professionally accepted protocol toward gender reassignment, consultation with endocrinology may be requested by the review panel; until endocrinologists have completed their evaluation in such cases, and unless clinically contraindicated, the hormone therapy will be continued once approved through the prison utilization review process." (Doc. No. 1 at 17). Based on this policy, NCDPS denied Plaintiff's request for hormone therapy, finding that "[t]here is no evidence in Offender Battle's medical record of hormone therapy prior to incarceration. There are no orders for endocrinology consult or UR approval at this time." (Id.).

2

denial of Plaintiff's requests to receive hormone therapy, Plaintiff alleges that Defendants are being deliberately indifferent to her serious medical needs, in violation of the cruel and unusual punishment clause of the Eighth Amendment to the U.S. Constitution.[2] (Doc. No. 1 at 6). Plaintiff seeks injunctive and declaratory relief in the form of an order by this Court requiring the prison to provide Plaintiff with hormone therapy. Plaintiff also seeks compensatory damages.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable

---

[2] Plaintiff also appears to be attempting to bring claims under the First, Eighth, Ninth, Tenth, and Fourteenth Amendments to the U.S. Constitution, and under Article 1, Sections 1, 2, 14, 19, 27, and 36 of the North Carolina Constitution. The Court will decline to address these other grounds on initial review because as the Court discusses, infra, Plaintiff's Eighth Amendment claim survives initial review, and the Court will allow Defendants to address Plaintiff's other purported claims in subsequent pleadings.

3

under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III.	DISCUSSION**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate.  Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."  Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim.  Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").  To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).  "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention."  Stokes v. Hurdle, 393 F. Supp.

4

757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Plaintiff alleges that she has been diagnosed with Gender Identity Disorder and that her constitutional rights are being violated because Defendants have denied her request for hormone therapy and treatment with a transgender dysphoria specialist. Courts have routinely held that gender dysphoria is a serious medical need for purposes of the Eighth Amendment. Battista v. Clarke, 645 F.3d 449, 453-55 (1st Cir. 2011); Allard v. Gomez, 9 F. App'x 793, 794 (9th Cir. 2001); White v. Farrier, 849 F.2d 322, 325 (8th Cir. 1988); Soneeya v. Spencer, 851 F. Supp. 2d 228, 243 (D. Mass. 2012); Wolfe v. Horn, 130 F. Supp. 2d 648, 652 (E.D. Pa. 2001). To the extent that Plaintiff is attempting to bring an Eighth Amendment claim against Defendants based on the allegation that she is being denied hormone therapy and treatment with a transgender dysphoria specialist, these allegations survive initial review as to Defendants Jonker, Smith, and Sims.[3] See Gully-Fernandez v. Wisconsin Dep't of Corrs., No. 15-cv-995, 2015 WL 7777997

---

[3] At least one other district court has found as facially unconstitutional another state's policy of providing treatment for gender dysphoria only to those prisoners who were already receiving such treatment before incarceration. Brooks v. Berg, 270 F. Supp. 2d 302, 312 (N.D.N.Y. 2003), vacated in part on other grounds, 289 F. Supp. 2d 286 (N.D.N.Y. 2003). Furthermore, the U.S. Department of Justice has issued a statement that policies such as the one implemented by the

(E.D. Wis. Dec. 1, 2015) (finding that, on initial review under Section 1915, the plaintiff "may proceed on his claim that the defendants refused to treat his gender identity disorder, under the Eighth Amendment"). However, as to NCDPS Secretary Frank Perry, Plaintiff has alleged no personal conduct by him. It is well settled that Defendants cannot be held liable merely by virtue of their supervisory positions. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). Thus, Defendant Perry will be dismissed as a named Defendant to the extent that he has been sued in his individual capacity. To the extent that he has been sued in his official capacity, the Court will construe the claim as a claim for prospective injunctive relief against the State of North Carolina. Furthermore, Plaintiff has not identified Defendants "Jane Doe" or "John Doe" anywhere in the factual allegations; thus, they will also be dismissed as Defendants.

## IV. CONCLUSION

In sum, the Court finds that this action survives initial review as to Defendants Jonker, Smith, and Sims.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's allegations survive initial review as to Defendants Jonker, Smith, and Sims, but the remaining Defendants are dismissed. See 28 U.S.C. §§ 1915(e); 1915A.

---

NCDPS are unconstitutional. Federal Bureau of Prisons Program Statement 6031.04 ("Patient Care") provides that prisoners in Bureau custody with a possible diagnosis of gender dysphoria "will receive a current individualized assessment and evaluation" and "[t]reatment options will not be precluded solely due to level of services received, or lack of services, prior to incarceration." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 6031.04 ("Patient Care") at 42, June 3, 2014, available at http://www.bop.gov/policy/progstat/6031_004.pdf.

2. The Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and identify Defendants Jonker, Smith, and Sims in the summonses for service of process, and then return the summonses to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service. Once the Court receives the summonses from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendants.

*Frank D. Whitney*
Chief United States District Judge